ELIZABETH L. AUGUSTINE *et al.*, Plaintiffs-Appellants, v. REGIONAL BOARD OF SCHOOL TRUSTEES OF MADISON COUNTY *et al.*, Defendants-Appellees.

Fifth District   No. 5—92—0005

Opinion filed December 29, 1993.

David M. Smith, of Springfield, for appellants.

Freeark, Harvey, Mendillo, Dennis, Wuller & Buser, P.C., of Belleville (Jeffery A. Cain, of counsel), for appellee Board of Education of Livingston Community Consolidated School District No. 4, Madison County, Illinois.

Lucco, Brown & Mudge, of Edwardsville (J. William Lucco, of counsel), for appellees Larry Benardin, Robert Engelke, Alan Libbra, and Karen Mitchelar.

William R. Haine, State's Attorney, of Edwardsville (Lewis E. Mallott, Assistant State's Attorney, of counsel), for appellees Regional Board of School Trustees and Regional Superintendent of Schools of Madison County, Illinois.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Elizabeth L. Augustine, James D. Cuppett, Miles Dudley, Cindi Keeton, Virginia M. Balen, Dave M. Martintoni, Otto F. Schuette, Geno M. Seganfredo, Frank Smiley, and Lowell Wayne Willows, registered voters of the current Livingston Community Consolidated School District No. 4 (hereinafter District), brought a petition to dissolve the current district under section 7—2a(b) of the School Code (the Code) (Ill. Rev. Stat. 1989, ch. 122, par. 7—2a(b)). The Regional Board of School Trustees of Madison County (hereinafter Regional Board) denied the petition because it did not contain enough valid signatures to validate the petition. Plaintiffs brought an action for administrative review pursuant to the Administrative Review Law (the Act) (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 et seq.) in the circuit court of Madison County challenging the denial of their petition. The defendants were the Regional Board and its members, Joseph Berry, Ted Prehn, James Wells, Willard Flagg, Ted Vrendick, Shirley Highlander, and Carl Taake; Harry A. Briggs, regional superintendent of schools of Madison County, Illinois, and ex officio secretary of the Regional Board of School Trustees of Madison County, Illinois; the Board of Education of the Livingston Community Consolidated School District No. 4; the Board of Education of the Staunton Community Unit School District No. 6; and the Board of Education of Highland Community Unit School District No. 5 and its members, Larry Benardin, Robert Engelke, Alan Libbra, and Karen Mitchelar. The circuit court affirmed the decision of the Regional Board. Plaintiffs now appeal from that order. The issues we are asked to consider are (1) whether it is proper to consider the withdrawal of signatures of certain petitioners, and (2) whether the decision of the Regional Board was against the manifest weight of the evidence. We affirm.

On November 5, 1990, a petition was filed with the regional superintendent of schools of Madison County seeking dissolution of the Livingston Community Consolidated School District. The committee filing the petition stated that there were 494 verified signatures. According to a November 28, 1990, statement by Evelyn Bowles, the Madison County clerk, there were 928 registered voters in the school district as of the date of filing. Bowles certified 492 signatures.

On January 30, 1991, a supplemental petition with 20 additional signatures was filed with the Regional Board. Only 12 of the signatures were valid and two of the 12 valid signatures were reinstatements, meaning they were signatures of persons who signed the original petition, subsequently withdrew, and were again petitioning. On

February 4, 1991, plaintiffs filed a second supplemental petition containing six additional signatures. Three of these signatures were reinstatements, and three were entirely new signatures. Also on February 4, 1991, a meeting of the Regional Board of School Trustees was held to address the November 5, 1990, petition to dissolve the school district. At that meeting, objectors to the petition appeared and presented the Regional Board with the requests of 54 persons to withdraw their signatures from the petition. The Regional Board recessed until February 11, 1991, to allow the withdrawals to be scrutinized in the same manner the original signatures were scrutinized by the county clerk. On February 4, 1991, the Regional Board also determined that it would not accept any additional petitions, withdrawals, or reinstatements after February 4, 1991. None of the parties objected to this. On February 11, 1991, the Regional Board reconvened and at that time received a certificate from the county clerk concerning the 54 withdrawals. Ultimately, the Regional Board found that five persons had executed new petitions after their withdrawals and thus could not be counted as valid withdrawals, two should not be considered due to absence of date, and one of the signatures was that of an unregistered voter. Thus, the Regional Board found that there were 46 valid withdrawals.

The Regional Board determined that there were 510 valid signatures. This number was arrived at by allowing the county clerk's 492 certified signatures, adding 12 valid signatures submitted in the January 30, 1990, petition, plus all six of the signatures contained in the supplemental petition of February 4, 1991. The Regional Board then deducted the 46 valid withdrawals from the 510 valid signatures for a total of 464. This was one signature short of a majority, so the Regional Board determined that there was no jurisdiction to pursue the question of dissolving the school district and dismissed the petition. The Regional Board's decision was appealed to the circuit court pursuant to the Act (Ill. Rev. Stat. 1989, ch. 110, par. 3—101 et seq.). The circuit court entered an order finding that the determination of the Regional Board was not against the manifest weight of the evidence. This appeal followed.

Plaintiffs argue that the Board must determine the sufficiency of a petition for dissolution with regard to the requisite number of signatures as of the date of the filing of the petition and not allow withdrawals of signatures after the date of filing. Plaintiffs contend that the language of section 7—2a(b) of the Code (Ill. Rev. Stat. 1989, ch. 122, par. 7—2a(b)) is unique among various school district reorganization methods and fixes the date of the filing of the petition as the

date upon which its validity is determined. Defendants reply that the Regional Board properly considered withdrawals filed after the date the original petition was filed. Defendants contend that the law is clear that one has a right to withdraw his or her signature from a petition before final action is taken on the petition. We agree with defendants.

■ Section 7—2a(b) of the Code provides, in pertinent part:

"(b) Any school district with a population of less than 5,000 residents shall be dissolved and its territory annexed as provided in Section 7—11 by the regional board of school trustees upon the filing with the regional board of school trustees of a petition adopted by resolution of the board of education or a petition signed by a majority of the registered voters of the district seeking such dissolution. The petition shall be filed with and decided solely by the regional board of school trustees of the region in which the regional superintendent of schools has supervision of the school district being dissolved. The regional board of school trustees shall not act on a petition filed by a board of education if within 45 days after giving notice of the hearing required under Section 7—11 a petition in opposition to the petition of the board to dissolve, signed by a majority of the registered voters of the district, is filed with the regional board of school trustees. The regional board of school trustees shall have no authority to deny dissolution requested in a *proper* petition for dissolution filed under this subsection (b), but shall exercise its discretion in accordance with Section 7—11 on the issue of annexing the territory of a district being dissolved, giving consideration to but not being bound by the wishes expressed by the residents of the various school districts that may be affected by such annexation." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 122, par. 7—2a(b).)

In this case, a majority of voters of Livingston Community Consolidated School District No. 4 signed a petition seeking dissolution of that school district. However, by the time the Regional Board conducted a hearing on the petition, several registered voters withdrew their signatures from the petition. We believe the Regional Board was within its discretion to allow the withdrawals.

■ It has long been the accepted rule in Illinois that a petitioner in an administrative proceeding may withdraw his signature before the petition is acted upon in the same manner in which he signed it. (*People ex rel. Bodecker v. Kramer* (1947), 397 Ill. 592, 595, 74 N.E.2d 896, 898; *Heppe v. Mooberry* (1932), 350 Ill. 641, 647, 183

N.E. 636, 639; *Board of Education of Metropolis Community High School District v. County Board of School Trustees* (1976), 34 Ill. App. 3d 901, 904, 341 N.E.2d 10, 11.) The general rule was first articulated in *Littell v. Board of Supervisors* (1902), 198 Ill. 205, 65 N.E. 78, where our supreme court determined that petitioners for the organization of a new township could, after the petition had been presented to the county board, withdraw their names and thereby leave a statutorily deficient number of names so as to defeat the organization. The *Littell* court found that the act of signing such petitions could be revoked any time before final action was taken by the body authorized to act. The principle of *Littell* has been applied to various petitions. The reasons for such a rule are clear:

> "Signatures to such petitions are easily obtained. Ordinary experience teaches that, in matters which do not seem closely to touch themselves, many persons sign petitions without sufficient consideration and inquiry, and if the subject afterwards becomes a matter of public discussion so that their attention is carefully drawn to the reasons for that for which they have petitioned, they often then conclude they have been hasty in signing, or are in error, or that they do not wish the petition granted." (*County Court v. Pogue* (1904), 115 Ill. App. 391, 399, *aff'd sub nom. Kinsloe v. Pogue* (1904), 213 Ill. 302, 72 N.E. 906.)

While no other case has allowed withdrawals under section 7—1a(b) of the Code, several cases have addressed different sections of the Code and have allowed withdrawals of signatures.

For example, in *Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill. App. 3d 512, 448 N.E.2d 555, a petition was brought under section 7—2 of the Code to detach certain territory from one school district and annex to other school districts (Ill. Rev. Stat. 1979, ch. 122, par. 7—2). Section 7—2 of the Code allows detachment if a petition is brought by two-thirds of the legal voters residing in any territory proposed to be detached. In *Konald*, over two-thirds of the registered voters in the area sought to be detached initially signed the petition. Later, during the Cook County Regional Board hearing on the matter, a document signed by 78 of the initial petitioners was submitted requesting that their names be withdrawn from the petition to detach. The *Konald* court determined that the request to withdraw was properly submitted prior to the final decision, and since the withdrawal was timely, the petition before the board was legally insufficient and the board had no author-

ity to act further on the petition. (*Konald*, 114 Ill. App. 3d at 521, 448 N.E.2d at 561.) In doing so, the *Konald* court stated:

"[There is a] strong reluctance to cut off the rights of petitioners to change their minds at any point before the acting tribunal has finally disposed of the matter and the petition in accordance with its proper powers. Even where that tribunal has no discretion to determine the merits of the proposal in the petition and is compelled to act on the petition provided the petition is legally sufficient, the filing of the petition is not the point at which its sufficiency is decided. Jurisdiction over the matter in the petition does not attach at all if names are withdrawn before the sufficiency of the petition is determined. Where the administrative tribunal does have the power to decide the merits, it may not proceed with the hearing unless initially the petition is legally sufficient, and even then it may not proceed to a final order unless the requisite number of names remains in effect. Final action has been construed liberally to mean the time at which an order is legally effective and not simply the time at which a decision is reached. However, the rights of petitioners to add or withdraw their names do not continue during the time for appeal." *Konald*, 114 Ill. App. 3d at 519, 448 N.E.2d at 560.

■■ Here, we agree with the trial court that "section 7—2a(b) speaks of dissolution upon a *proper* petition, not on any petition, and a determination must be made that there are sufficient proper signatures before the Regional Board could be required to meet and determine the disposition of the territory of a school district dissolved under section 7—2a(b)." We find no reason to depart from the well-settled general rule in Illinois that a petitioner is allowed to withdraw his name from a petition before the petition is acted upon. In the instant case, the petition was not final until it was determined by the Regional Board that the signatures were proper. Thus, we believe that the Regional Board was correct to consider the withdrawals of certain petitioners after the date the petition was filed.

We are aware that the result reached herein is different from the result reached by our colleagues on the Fourth District Appellate Court in *Board of Education of Wapella Community Unit School District No. 5 v. Regional Board of School Trustees* (1993), 245 Ill. App. 3d 776, 614 N.E.2d 1383, who determined that there is a presumption of immediate validity of a petition filed under section 7—1a(b) of the Code which is sufficient to prevent requests to withdraw from the petition from being filed after the petition for dissolution has been filed.

The *Wapella* court recognized the strong preference for allowing withdrawals by petitioners but determined that section 7—2a(b) of the Code differs from *Littell* and its progeny in that section 7—2a(b) creates a presumption of validity of the petition which attaches immediately upon the filing of the petition without the further necessity of a Regional Board taking final action within the meaning of *Littell*. (*Wapella*, 245 Ill. App. 3d at 782, 614 N.E.2d at 1387.) We, however, believe that if withdrawals were not to be allowed, the General Assembly would have so stated, as it is such a striking departure from the general rule. The fact that section 7—2a(b) in essence allows a "counterpetition" to be filed by those opposed to dissolution does not, in our estimation, prohibit withdrawals from being considered. A counterpetition filed within 45 days after the filing of the petition to dissolve by a majority of registered voters is separate and distinct from the longstanding tradition to allow withdrawals from which we decline to depart. The counterpetition is another way to halt dissolution proceedings but should not be considered a prohibition against allowing petitioners to withdraw their names.

■ Plaintiffs next contend that even if we determine that withdrawals are to be allowed after the date of filing of the petition to dissolve, the withdrawals from the instant petition were inconsistently and unlawfully counted and, thus, the decision of the Regional Board was against the manifest weight of the evidence. Since we determined that it was not proper to consider the petition only as it existed upon filing, plaintiffs now want us to consider the petition crediting all initial and later signatures and withdrawals without regard to propriety or form. Defendants respond stating that the determination of the Regional Board not to allow any further deletions or additions of signatures after February 4, 1991, was reasonable and that the Board's decision was not against the manifest weight of the evidence. We agree with defendants.

The scope of judicial review of decisions of administrative agencies is limited to consideration of the record to determine whether findings and orders of the agency are against the manifest weight of the evidence; courts are not authorized to reweigh the evidence or to make an independent determination of the facts. (*Letourneau v. Department of Registration & Education* (1991), 212 Ill. App. 3d 717, 730, 571 N.E.2d 783, 791-92; *Kessell v. Illinois Liquor Control Comm'n* (1978), 56 Ill. App. 3d 485, 371 N.E.2d 1210.) We must review the record to determine whether the decision of the Regional Board is supported by any evidence or whether it is contrary to the manifest weight of the evidence. *Oakdale Community Consolidated*

*School District No. 1 v. County Board of School Trustees* (1957), 12 Ill. 2d 190, 195, 145 N.E.2d 736, 738.

In the instant case, on February 4, 1991, the Regional Board determined that it would allow no more withdrawals or additions as of that date. The hearing was then recessed until February 11, 1991, so that the county clerk could scrutinize the signatures of 54 persons wanting to withdraw their names from the petition. Neither party objected to the Regional Board's order not to allow any more additions or withdrawals after February 4, 1991. Moreover, the recess was done at the suggestion of plaintiffs to allow scrutiny of the withdrawals. We believe the Regional Board's determination not to allow any additions or withdrawals after February 4, 1991, was reasonable under the circumstances. A cutoff date was necessary to prohibit this matter from becoming protracted.

In support of our decision we cite to *Board of Education of Avoca School District No. 37 v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067, 403 N.E.2d 578 (Avoca), where the court considered the rights of petitioners to withdraw from and reinstate names on a petition for detachment and annexation pursuant to section 7—1 of the Code. The petition was filed on September 7, 1977, with a sufficient number of signatures. Later, some signatures were withdrawn, some withdrawals were reinstated, and additions were made. Then in May 1978, a hearing was held. When the trial court reviewed the case, the legality of the petition was in question, so the trial court remanded the case to determine jurisdiction. The trial court remanded with instructions that September 7, 1977, the date the petition was filed, be the date for determination of eligibility of the voters to sign but that any additions, withdrawals, reinstatements, and/or additions would be counted if they were filed prior to June 1, 1978. Our colleagues on the First District Appellate Court approved of this time frame. *Avoca*, 82 Ill. App. 3d at 1071-72, 403 N.E.2d at 581.

There is a strong presumption "that statutes which relate to one subject are governed by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious." (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52, 563 N.E.2d 465.) Sections of the Code are *in pari materia* and must be construed in reference to one another to give harmonious meaning to the act as a whole. (*Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389, 415 N.E.2d 1034, 1041.) The history and language of sections 7—1 and 7—2a(b) of the Code are not in conflict and should be read and construed in harmony. (*Helmig v. John F. Kennedy Community Consolidated School District No. 129* (1993), 241

Ill. App. 3d 653, 661, 610 N.E.2d 152, 158.) Accordingly, we believe the instant case is similar to the *Avoca* case (*Board of Education of Avoca School District No. 37 v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067, 403 N.E.2d 578) and the time frame determined by the trial court herein was reasonable. If anything, the trial court erred in allowing additional signatures to the petition because additions after the date of filing are clearly prohibited by section 7—1 of the Code. Ill. Rev. Stat. 1989, ch. 122, par. 7—1.

In the instant case, the Regional Board's determination to allow withdrawals was reasonable. The Regional Board made a logical determination to set a cutoff date but was fair in its attempt to safeguard the right of every eligible voter to participate in the dissolution process. After reviewing the record, we cannot say that the Regional Board's determination that petitioners lacked a majority was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Madison County affirming the decision of the Regional Board is affirmed.

Affirmed.

LEWIS, P.J., and MAAG, J., concur.